UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER RONALD
JACOBS,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

_____/

Case No. 2:19-cv-12382
District Judge Nancy G. Edmunds
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (ECF No. 19), GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 20) and AFFIRM THE
COMMISSIONER'S DECISION**

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 19), **GRANT** Defendant's motion for summary judgment

(ECF No. 20), and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

Plaintiff, Christopher Ronald Jacobs, brings this action under 42 U.S.C. §§

405(g) and/or 1383(c)(3) for review of a final decision of the Commissioner of

Social Security ("Commissioner") denying his applications for supplemental

security income (SSI) and disability (DI) benefits. This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 19), the Commissioner's cross-motion for summary judgment (ECF No. 20), Plaintiff's reply (ECF No. 25), and the administrative record (ECF No. 16).

**A.     Background and Administrative History**

Plaintiff filed his applications in December 2015, alleging that his disability began on June 17, 2015, at the age of 50.  (R. at 165, 172.)  In his disability report, he lists several conditions (herniated discs in his back, rheumatoid arthritis (RA), Celiac's Disease, plaque psoriasis, left foot injury, attention deficit disorder (ADD), and depression) as limiting his ability to work.  (R. at 201.)  His applications were denied in May 2016.  (R. at 84-127.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 128.)  On November 3, 2017, ALJ Beth J. Contorer held a hearing, at which Plaintiff and a vocational expert (VE), James Fuller, testified.  (R. at 35-83; *see also* R. at 258.)  On February 28, 2018, ALJ Contorer issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 18-34.)

Plaintiff submitted a request for review of the hearing decision.  (R. at 159-163.)  However, on September 27, 2018, the Appeals Council denied Plaintiff's

request for review.  (R. at 1-6.)  Thus, ALJ Contorer's decision became the

Commissioner's final decision.

The Appeals Council twice granted Plaintiff an extension of time within

which to file a civil action.  (R. at 7, 11.)  Plaintiff timely commenced the instant

action on August 12, 2019, on his own behalf.

### B.    Plaintiff's Medical History

The administrative record contains approximately 239 pages of medical

records, including those from physician Gary Holloway, D.O. of McLaren Oakland

– Lake Orion, which span the period from March 2015 to October 27, 2017, *i.e.*, up

to just days before the November 3, 2017 administrative hearing.  (R. at 313-353,

R. at 444-492, & R. at 494-502).  These records were available to the ALJ at the

time of her February 28, 2018 decision (*see* R. at 34) and will be discussed in

detail, as necessary, below.[1]

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity (SGA) since June 17, 2015, the alleged onset date

---

[1] The Court is perplexed by the ALJ's apparent admission of Exhibits 1A-*11F* at
the administrative hearing (R. at 38), given that the ALJ's subsequent written
decision only lists Exhibits 1A-*10F* (R. at 31-34).  The Court can only assume that
the reference to Exhibit 11F is a transcriptional error.

(AOD).  (R. at 23.)  At **Step 2**, the ALJ found that Plaintiff had the following

severe impairments:  grade one spondylolisthesis in the lumbar spine, psoriasis,

obesity, and a history of traumatic injury to the left foot.  (*Id*. at 23-25.)  At **Step 3**,

the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed

impairments.  (*Id*. at 25.)  **Between Steps 3 and 4** of the sequential process, the

ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined

that Plaintiff had the RFC:

> . . . to perform sedentary work . . . except:  he may only occasionally
> push or pull [*i.e., exertional limitations*], climb, balance, stoop, kneel,
> crouch, crawl [*i.e., postural limitations*], or reach overhead [*i.e.,
> manipulative limitation*]; he may not . . . climb ladders, ropes or
> scaffolds [*i.e., postural limitations*], operate foot controls with the left
> foot [*i.e., exertional limitation*], or crouch [*i.e., postural limitation*];
> he must avoid hazards including vibration, heavy machinery and
> commercial driving [*i.e., environmental limitations*]; and he must
> have the ability to use a cane to ambulate; [and] the ability to alternate
> between sitting and standing up to three times per hour [*i.e.,
> exertional limitations*] . . . .

(*Id*. at 25-28.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (*Id*. at 27.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ concluded that Plaintiff had

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. (*Id.* at 27, 29.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 17, 2015, through the date of the decision. (*Id.* at 29.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

Notably, the fact that Plaintiff is proceeding *in pro per* does not lessen his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed

6

to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### E.    Analysis

#### 1.    Step 2

Plaintiff's first statement of error is that the ALJ failed "to consider the combined effect of all of [his] impairments in determining severity[,]" at Step 2 of the sequential analysis, 20 C.F.R. § 404.1520(a).  (ECF No. 19, PageID.564.) Instead, Plaintiff claims, the ALJ used "a disconnected  approach . . . [,]" or "pars[ed] his diagnoses."  (ECF No. 19, PageID.564-565, 568.)  He contends that

the combined effects of his serious physical and mental impairments "is enough to warrant a finding of disabled."  (ECF No. 19, PageID.566.)

At Step 2, the ALJ found that several of Plaintiff's impairments were severe, but also explained why Plaintiff's celiac disease, RA, depression, anxiety, and attention deficit hyperactivity disorder (ADHD) did not qualify as severe.  (R. at 23-25.)  The applicable regulation states:  "At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a *combination* of impairments that is severe and meets the duration requirement, we will find that you are not disabled."  20 C.F.R. § 404.1520(a)(4)(ii) (emphasis added).  *See also* 20 C.F.R. § 404.1520(c) ("You must have a severe impairment.").

### a.    Mental impairments (depression, anxiety, and ADHD)

Plaintiff seems to challenge the ALJ's Step 2 conclusions that Plaintiff's depression, anxiety, and ADHD are not severe (R. at 24), although he also refers to the ALJ's RFC assessment that Plaintiff's subjective statements were "not entirely consistent with the medical evidence and other evidence in the record . . . [,]" (R. at 26) and, albeit within another portion of his brief, the ALJ's assignment of weight to Dr. Holloway's October 27, 2017 records (R. at 28, 494-502).  (ECF No. 19, PageID.565-566, 574.)

       **i.**    **The conclusions that Plaintiff was only *mildly* limited in "understanding, remembering, or applying information" and in "concentrating, persisting, or maintaining pace."**

The ALJ concluded that Plaintiff had only mild limitations in "understanding, remembering, or applying information" and in "concentrating, persisting, or maintaining pace."  (R. at 24.)  In arriving at these conclusions, the ALJ noted:

- While the claimant has been diagnosed with ADHD, the record indicates that this condition is adequately controlled by medication ([R. at 444]).  Similarly, L. Imasa M.D., a psychological consultative examiner, concluded that the claimant had . . . only a "slight" difficulty with immediate recall ([R. at 357]).

- Claimant has testified as to his difficulties maintaining concentration and keeping pace (Hearing; [R. at 218]).  Medical records indicate, however, that claimant has improved his concentration with medication and that his anxiety is stable ([R. at 444, 448]).

(R. at 24.)

Plaintiff's related arguments are more an attack on the RFC than on the ALJ's Step 2 mental health conclusion.  First, Plaintiff seems to argue that the ALJ should have adopted a limitation for Plaintiff's "significant concentration and memory problems[,]" to account for the "depression with anxiety" described in treating physician Dr. Holloway's October 27, 2017 records (R. at 494-502).  (ECF No. 19, PageID.573.)  In the RFC discussion, the ALJ expressly noted Plaintiff's

reported "memory and concentration difficulties[,]" in support of which she cited Plaintiff's function report (R. at 218, 219) and hearing testimony, presumably the testimony that he was let go from his job in June 2015, in part due to concentration "[a]nd then I couldn't keep up with the other guys," and "I was getting numbers messed up – VIN numbers and stock numbers." (R. at 43, 49).  (R. at 26.) However, Plaintiff's contention that the ALJ did not adequately consider the "human element" present in his Auto Salesman job but absent in the Telephone Solicitor position – *i.e.*, that the ALJ "improperly conclude[d] that he will be able to use his persuasion skills via a different medium of conducting sales[,]" – does not illustrate that he was entitled to a limitation in "concentrating, persisting, or maintaining pace[,]" such as to account for "limits on the duration of a phone call . . . ."  (ECF No. 19, PageID.573-574.)

 Also, Plaintiff contends that, although he is "prescribed medication to curb his ADHD and anxiety, . . . his inability to perform at work *may* exacerbate his anxiety as there is no clear indication in the evidence as to how these two impairments may interact and manifest."  (ECF No. 19, PageID.568 (emphasis added).)  However, as the Commissioner correctly notes, this is speculative.  (ECF No. 20, PageID.592.)  It is also an admission about the state of the evidence regarding the interaction and manifestation of his anxiety and ADHD.  To the extent Plaintiff asserts that the ALJ's "simplistic understanding" of managing

mental impairments does not take into account his overall condition, Plaintiff has

not shown that the ALJ was required to consider Plaintiff's "physical impairments"

and Plaintiff's "lack of stability" when considering the "four broad functional

areas."  20 C.F.R. § 404.1520a ("Evaluation of mental impairments.").  (ECF No.

19, PageID.568.)

### ii.   The conclusions that *no limitations* were warranted for "interacting with others" and "adapting or managing oneself."

The ALJ concluded that *no limitations* were warranted for "interacting with

others" or "adapting or managing oneself."  (R. at 24.)  The ALJ explained these

conclusions as follows:

- Claimant previously worked as a used car salesman, a position requiring charisma and persuasiveness.  Claimant also testified that he regularly sees his children and grandchildren.  While a personality conflict played some role in the claimant's termination from his previous employment, Claimant testified that he felt the real reason was his inability to keep pace and the difficulty he had showing cars to potential customers (Hearing).

- Claimant testified that he is able to attend to his own hygiene, cook simple meals, drive, and do his own laundry ([R. at 213, 214]; Hearing).  Claimant has stable housing and collects food assistance benefits ([R. at 213]).  He regularly visits his medical treaters and has no criminal history.  Claimant is obviously able to care for himself on a *sustained basis*.

(R. at 24 (emphasis added).)  As Plaintiff sees it, the former analysis "ignores the

fact that [he] is no longer working because of his condition and does not address

how the basic human activity of spending time with one's grandchildren equates

11

with an ability to work[,]" and, as to the latter analysis, "the fact that [he] engages in minimal activities of daily living, with significant support from other people, does not equate with an ability to work for purposes of benefits." (ECF No. 19, PageID.561 n.1, 2.)

Perhaps referring to the ALJ's Step 2 comments regarding "adapting or managing oneself," Plaintiff claims that the ALJ "improperly overstated" his "ability to perform other basic activities at home a[s] proof of his ability to enter the workplace." (ECF No. 19, PageID.575-576; *see also id*., PageID.574.) As Plaintiff points out, "[t]he Social Security Administration and the 6th Circuit have made clear that the ability to perform minimal daily activities does not equate to the ability to perform work activities on a regular basis, 40 hours a week." *Coloske v. Comm'r of Soc. Sec.*, No. 12-15198, 2014 WL 1048156, at *7 (E.D. Mich. Mar. 18, 2014) (Berg, J., *adopting report and recommendation of* Hluchaniuk, M.J.). Still, "[a]n ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997). If Plaintiff is challenging his "ability to start working on a sustained basis[,]" (ECF No. 19, PageID.576), then he should be challenging the ALJ's *RFC finding*, or, as the written decision explains, "his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments[,]" (R. at 22-23), not the ALJ's *Step 2*

*finding* that "Claimant is obviously able to care for himself on a *sustained* basis[,]" (R. at 24 (emphasis added)).[3]  Moreover, it is important to bear in mind that in the Sixth Circuit, "the severity determination is 'a *de minimis* hurdle in the disability determination process.'"  *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).  The test is used to "screen out totally groundless claims."  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).  The Step 2 severity analysis is simply a threshold determination.  Sixth Circuit precedent readily establishes that failure to find an impairment severe at Step 2 of the sequential analysis is not reversible error if the ALJ found another impairment severe, continued with the five-step evaluation, and considered both severe and non-severe impairments when determining the RFC.  *See e.g., Fink v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007); *Anthony*, 266 F. App'x at 457.  "The fact that some of [the plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant."  *Anthony*, 266 F. App'x at 457; *accord Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F.Supp.2d 792, 822-23 (E.D. Mich. 2013) ("any alleged omission from the list of severe

---

[3] Plaintiff's reliance upon *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013) is somewhat misplaced, because he cites a portion of the opinion concluding that "[t]he ALJ failed to weigh the medical opinions according to 20 C.F.R. § 404.1527[,]" *Gayheart*, 710 F.3d at 376, which is distinct from an argument that one of the functional factors was improperly considered at Step 2.  (*See* ECF No. 19, PageID.577.)

impairments does not undermine the ALJ's decision[,]" so long as the ALJ

considers Plaintiff's "severe and nonsevere impairments in the remaining steps of

the sequential analysis.") (citation omitted).

Furthermore, if Plaintiff's reference to his testimony about pain and pain

medications was intended to challenge the ALJ's evaluation of his symptoms (ECF

No. 19, PageID.575; R. at 64-65), Plaintiff has not shown that the ALJ improperly

evaluated his activities of daily living when considering "other evidence."  20

C.F.R. § 404.1529(c)(3).

### iii.    The assignments of weight to the opinion evidence within the RFC determination

As explained above, even if, for the sake of argument, the ALJ had

improperly determined that Plaintiff's depression, anxiety, and ADHD were "non-

severe," the error is harmless if the ALJ properly considered these impairments in

the remaining steps of the sequential evaluation.  *Maziarz v. Sec'y of Health &*

*Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly

could consider claimant's cervical condition in determining whether claimant

retained sufficient residual functional capacity to allow him to perform substantial

gainful activity, the Secretary's failure to find that claimant's cervical condition

constituted a severe impairment could not constitute reversible error."); *see also*

*Parker v. Comm'r of Soc. Sec. Admin.*, No. 2:17-CV-12307, 2018 WL 6566576, at

*4 (E.D. Mich. Aug. 17, 2018) (citing *Maziarz*), *report and recommendation*

*adopted sub nom. Parker v. Comm'r of Soc. Sec.*, No. 17-12307, 2018 WL

5800920 (E.D. Mich. Nov. 6, 2018).

Plaintiff claims that the ALJ improperly treated Dr. Holloway's opinion as

"not corroborated . . . ."  (ECF No. 19, PageID.574.)  Specifically, the ALJ wrote:

> Partial weight is given to the opinion of Gary Holloway, one of the
> claimant's treating physicians.  Dr. Holloway correctly recommends
> limitations on standing and walking as well as a prohibition on foot
> controls.  However, Dr. Holloway goes on to opine that the claimant's
> impaired concentration would prevent him from doing any skilled
> work ([R. at 500]).  Dr. Holloway also concludes that the claimant
> suffers from chronic fatigue ([R. at 500]).  <u>This opinion simply goes
> beyond the medical evidence</u>.  Dr. Holloway's own notes indicate that
> the claimant's concentration was improving[,] and the claimant has
> never raised fatigue as a significant symptom.  He further denied any
> negative side effects from his prescribed medication (Hearing).

(R. at 28 (emphasis added); *see also* R. at 70.)  Plaintiff's undeveloped challenge to

the ALJ's treatment of this opinion evidence does not show how the ALJ failed to

comply with 20 C.F.R. § 404.1527(c) ("How we weigh medical opinions.")

(applicable to claims filed before Mar. 27, 2017).

The ALJ expressly mentioned the mental health opinion evidence within the

RFC discussion.  After making multiple references to Plaintiff's function report (R.

at 212-214, 216-219) and hearing testimony (*see* R. at 35-83), and after noting that

his "statements concerning the intensity, persistence and limiting effects of [the

alleged] symptoms are not entirely consistent with the medical evidence and other

evidence in the record . . . [,]" the ALJ reviewed the medical evidence of record,

and, as to mental health, assigned "great weight" to the opinions of L. Imasa, M.D.,

the psychological consultative examiner (R. at 355-358) and Ashok Kaul, M.D.,

the state agency psychological consultant (R. at 102-104).  (R. at 26, 28, 27.)[4]

Plaintiff does not challenge these assignments of weight as improper under 20

C.F.R. § 404.1527.

### b.      Psoriasis & alleged psoriatic arthritis

Plaintiff also seems to take issue with the ALJ's Step 2 conclusions that

psoriasis was severe but RA was "non-medically determinable[,]" (R. at 23-24).

(ECF No. 19, PageID.566-567.)  As to these conditions, Plaintiff testified, *inter*

*alia*, that:

- He was scheduled to have an epidural the week prior to the hearing, but "the psoriasis has grown over, again, the area where he has to give me the shots.  And he can't do it when psoriasis is that high up my back."

- "my psoriasis has changed, in the last two years, just dramatically. . . . it's probably the worse it's ever been."

- "I started to get a little bit of improvement in the last, you know, I'd say, six months with the same ointment.  But when the weather changes to cold and dry, it's going to be a 10 percent back, and I get covered in it."

---

[4] While Dr. Imasa's MSS notes state that "[h]e appeared to be depressed, but did not show any emotion[,]" but also state that "[m]entally, he does not appear depressed[,]" and "[h]e does not show any emotion[,]" it remains that she diagnosed depressive order, not otherwise specified.  (R. at 357.)

- When asked why he did not go to a dermatologist, Plaintiff explained, "that was working, and this just started getting bad."

- He has not been to a dermatologist in the last two years, as he "had insurance off and on, and . . . couldn't afford to pay."

- He had an appointment scheduled with a dermatologist, but he did not know the date, although he thought it was "[n]ext Friday[,]" presumably November 10, 2017.

- "The arthritis is getting worse."

- "My knees are arthritic, really – and that's – and for a long time.  Yeah, it's probably been over 10/15 years that they've been bad.  Yeah."

(R. at 50-52, 59, 67.)

The ALJ addressed these conditions at multiple steps.  At Step 2, with respect to the RA, the ALJ cited Plaintiff's hearing testimony and his disability report (DDE) (*see* R. at 84, 97, 201).  (R. at 24.)  Then, the ALJ explained that "[n]o such diagnosis, which is usually supported by a blood test, is present in the record."  (*Id.*)  Then, at Step 3, the ALJ expressly addressed Listing 1.04 ("Disorders of the spine") and Listing 8.05 ("Dermatitis").  (R. at 25.)  In concluding that Plaintiff "does not meet the requirements of any Listing[,]" the ALJ explained:

> Listing 1.04 requires a showing of either nerve root compression, spinal arachnoiditis, or psuedoclaudication.  None of these are present.  As to Listing 8.05, the Claimant testified that his psoriasis was medically controlled until very recently (Hearing).  He is in the

process of seeing a new dermatologist (Hearing).  Also, the record
does not disclose the frequency or extent of any skin lesions.

(R. at 25.)

Preliminarily, as an example of "combined effect," Plaintiff points to his
testimony that his psoriasis "prevented him from getting treatment for his back
pain."  (ECF No. 19, PageID.566.)  Plaintiff has a history of injection treatment for
his back pain.[5]  He testified that the most recent treatment occurred in April 2017.
(R. at 50, 398-400.)  Considering that Plaintiff underwent lumbar radiofrequency
three times over an approximate seventeen-month period, that the missed treatment
about which he testified would have taken place in October 2017 (*i.e.*,
approximately 6 months after his latest treatment), and that Plaintiff does not seem
to offer other examples of missed injections caused by psoriasis, the Court does not
have reason to believe that Plaintiff's psoriasis *regularly* caused missed injections.
Accordingly, even though the I recognize Plaintiff's claim that his psoriasis was
worsening (an argument which will be addressed further below), I agree with the

_____

[5] In July 8, 2015 records for a back pain visit, Dr. Holloway noted that "[p]ast
procedures have included epidural injection."  (R. at 336.)  Plaintiff appears to
have informed Dr. Hussain that facet joint injection helped significantly.  (R. at
389, 392, 395, 402, 409, 413, 416, 419, 425, 428, 434.)  Plaintiff underwent left
lumbar radiofrequency in November 2015 (R. at 310-311), left lumbar
radiofrequency in June 2016 (R. at 430-431), and right lumbar radiofrequency in
April 2017 (R. at 398-400).  These procedures reportedly offer significant relief.
(R. at 394, 401, 408, 433.)  In May 2017, Plaintiff informed Dr. Hussain's office
that he would consider a sacroiliac joint injection "if pain is worse."  (R. 396.)

Commissioner that Plaintiff "fails to establish that psoriasis measurably aggravated his back pain."  (ECF No. 20, PageID.594.)

More specifically, Plaintiff claims that his combination of psoriasis, spondylosis, arthritis, and severe lower back pain, in support of which he cites records from surgeon Mazher Hussain, M.D. (R. at 426, 442), *indicates* that he suffers from psoriatic arthritis, which is "the concurrence of psoriasis and polyarthritis, resembling rheumatoid arthritis but thought to be a specific disease entity, seronegative for rheumatoid factor and often involving the digits." Stedman's Medical Dictionary 75700 (Nov. 2014).  (ECF No. 19, PageID.566.) Specifically, Plaintiff relies upon *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) ("The ALJ's analysis of Gentry's disability claim is flawed in several respects, the primary errors being the ALJ's failure to consider objective medical evidence and treating physician opinions as to the severity of Gentry's psoriasis and psoriatic arthritis, failure to consider the combined effect of all of Gentry's impairments, and failure to follow the treating physician rule regarding Gentry's RFC.").  (R. at 19, PageID.566-568.)  However, as the Commissioner correctly points out, "Gentry . . . *ha[d]* psoriatic arthritis[.]"  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 711 (6th Cir. 2014) (emphasis added).  (ECF No. 20, PageID.595.)  By comparison, Plaintiff contends that Dr. Hussain's records

*indicate* psoriatic arthritis.  (ECF No. 19, PageID.566.)  This is not  evidence of

such a *diagnosis*, *i.e.* that he actually had it, just his own lay assumption.

Plaintiff also questions why the ALJ "did not seek to inquire about Jacobs'

treatment by a rheumatologist or a dermatologist, or to send Jacobs for

examination by any such specialists."  (ECF No. 19, PageID.567.n.3.)  Plaintiff

relies upon *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001), which is

not binding on this Court.  (*Id*.)  The Court suspects that, perhaps, Plaintiff is

relying upon 20 C.F.R. § 404.1512 ("Responsibility for evidence.") (effective Mar.

27, 2017), 20 C.F.R. § 404.1514 ("When we will purchase existing evidence.")

and/or 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective

medical evidence and, when it is obtained, we will consider it in reaching a

conclusion as to whether you are disabled.").  Yet, even though Plaintiff appears *in

pro per* before this Court, he was represented by an Accredited Disability

Representative, EDPNA (Richard K. Szydlowski) (R. at 131-132), who requested

medical records and questionnaires from Drs. Hussain and Holloway on October 6,

2017 (R. at 257; *see also* R. at R. at 269-312, 371-443, 494-502), submitted a

November 3, 2017 pre-hearing brief (R. at 259-260), represented Plaintiff at the

November 3, 2017 administrative hearing (R. at 37), and submitted a November 5,

2017 post-hearing memo (R. at 261-263).  Plaintiff has not shown that the ALJ

committed reversible error by failing to develop the record on "rheumatology

and/or dermatology." (ECF No. 19, PageID.567 n.3.) Nor is the Undersigned is convinced that the ALJ's was simply paying "lip service to the standard of review, including the requirement to consider all medical evidence." (ECF No. 25, PageID.640.)

Furthermore, the Court notes that: (i) when the ALJ discussed Plaintiff's left foot, she cited records from the October 2015 visit to McLaren Oakland – Pontiac, MI for a left foot injury, including the x-ray results (R. at 28, 264-268); (ii) when the ALJ discussed Plaintiff's spine, she cited the May 13, 2016 lumbosacral spine x-rays (R. at 26, 368-370); and, (iii) when the ALJ addressed psoriasis, she noted, "[u]ntil recently, that ailment was adequately controlled by ointment . . . [,]" and "[c]laimant has not provided any records regarding this condition and apparently has not seen a dermatologist during the *relevant period*[,]" (R. at 28 (emphasis added), 51). Thus, the ALJ's RFC discussion certainly considered evidence of musculoskeletal and dermatological conditions.[6] And like the ALJ suggests, evidence of the complications related to psoriasis, *e.g.*, dermatology records, are lacking for *the relevant period*, *i.e.*, the AOD of June 17, 2015 through the

---

[6] Also, albeit not expressly cited by the ALJ: (i) at the April 5, 2016 consultative examination, Plaintiff reported using an ointment to help calm down his psoriasis, which was "mostly on the body and extremities[,]" and internist Ernesto Bedia, M.D. noted that Plaintiff has "psoriatic skin lesions, mostly on the elbows, lower back, and lower abdominal area and extremities[,]" (R. at 360, 362); and, (ii) on May 27, 2016, state agency medical consultant, Susan Courtnage, M.D., noted, "[h]is psoriatic skin lesions were not described to be severe . . . [,]" (R. at 94, 107).

February 28, 2018 decision date, even if such complications may have existed at or near the time of the November 3, 2017 hearing.

Lastly, Plaintiff's reply brings into focus an argument regarding the trajectory of Plaintiff's condition, at least as to psoriasis. (*See* ECF No. 19, PageID.568; ECF No. 25, PageID.636, 640.) Plaintiff contends that the serious nature of his psoriasis at the time of the November 3, 2017 hearing warranted consideration of whether his skin lesions met or medically equaled Listing 8.05 ("Dermatitis"), which would require "extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." (ECF No. 25, PageID.636-637.) "Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation." Listing 8.00(C)(1). Plaintiff relies upon *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011) ("the ALJ found both a physical and mental impairment at Step Two[,]" but omitted analysis as to whether the physical impairments met or equaled a listing). (ECF No. 25, PageID.638-639.) *Reynolds* is distinguishable, because the ALJ in Plaintiff's case expressly addressed Listing 8.05 at Step 3, not only referencing Plaintiff's testimony but also noting that "the record does not disclose the frequency or *extent* of any skin lesions." (R. at 25.) (ECF No. 25, PageID.639-640 (emphasis added).) Thus, the ALJ did consider "the medical severity" of Plaintiff's psoriasis, 20 C.F.R. § 404.1520(a)(4)(iii), based on the record before

her. At Step 3 of the sequential analysis, Plaintiff bears the burden of establishing that his impairments meet or medically equal a listed impairment. *See Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 644-645 (6th Cir. 2006).

### c. Obesity

Plaintiff also seems to take issue with the ALJ's treatment of obesity, which was found to be severe at Step 2 (R. at 23) and mentioned in a footnote of the RFC discussion (R. at 26). (ECF No. 19, PageID.568.) The ALJ's footnote stated: "Claimant is obese. He has regularly recorded a body mass index in excess of 30 ([R. at 278, 281, 337, 378, 444, 475]). This condition is evaluated consistent with SSR 02-1p." (R. at 26.)

Plaintiff argues that the ALJ failed to account for his obesity (ECF No. 19, PageID.568), but Plaintiff does not show how the ALJ's application of SSR 02-1p (2002 WL 34686281) was improper, nor does he show how the RFC – with its various exertional, postural, environmental, and manipulative limitations, as well as the requirement that he must be permitted "the ability to ambulate with a cane[,]" (R. at 25) – fails to account for his obesity. *See, e.g., Smith v. Astrue*, 639 F. Supp. 2d 836, 847 (W.D. Mich. 2009) ("Smith had the burden of showing specifically how the obesity, in combination with other impairments, limited her ability to a degree inconsistent with the ALJ's RFC determination."). (*See also* ECF No. 20, PageID.596-597.)

### d.     The Court should affirm the ALJ's Step 2 assessments.

"A claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other."  *Yang v. Comm'r of Soc. Sec.*, No. 00-10446-BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004) (Lawson, J.).  Plaintiff has not shown that the ALJ improperly evaluated the "four broad functional areas[,]" 20 C.F.R. § 404.1520a ("Evaluation of mental impairments.").  Accordingly, the Court should affirm the ALJ's *Step 2 conclusion* that Plaintiff's depression, anxiety, and ADHD were non-severe.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("it is Mrs. Higgs' burden to prove the severity of her impairments.") (citing *Murphy v. Secretary of Health and Human Services,* 801 F.2d 182, 185 (6th Cir.1986)).

Likewise, Plaintiff has not shown error in the ALJ's treatment of mental health impairments, psoriasis, or obesity within the RFC determination.  *Maziarz*, 837 F.2d at 244.  Accordingly, the Court should affirm the ALJ's RFC determination as to these impairments, whether they were deemed severe or non-severe at Step 2.

### 2.     Use of technology in the Telephone Solicitor position

Plaintiff's second broad statement of error, although framed somewhat differently, substantively concerns his ability to perform the computer skills

required in a telephone solicitor position, which was the job identified by the ALJ

at Step 5. (ECF No. 19, PageID.569-575; R. at 29.)

### a. Transferable skills are significant in Plaintiff's case.

Plaintiff was 50 years of age at the time of his alleged onset date (AOD).

(R. at 165, 172.) Accordingly, the ALJ recognized Plaintiff as a "[p]erson closely

approaching advanced age." 20 C.F.R. § 404.1563(d). (R. at 27.) As Plaintiff

notes:

> An ALJ can use Medical–Vocational guidelines or "grids," found at
> 20 C.F.R. Part 404, Subpart P, Appendix 2, at the fifth step of the
> disability determination after the claimant has been found not to meet
> the requirements of a listed impairment, but found nevertheless
> incapable of performing past relevant work. *Jordan v. Comm'r of Soc.
> Sec.,* 548 F.3d 417, 423–24 (6th Cir.2008). <u>Normally, where a
> claimant suffers from an impairment limiting only his strength (i.e.,
> exertional limitations), the SSA can satisfy its burden through
> reference to the grids</u>. *Id.* at 424. The grids, in conjunction with the
> claimant's RFC, age, education and work experience, are used to
> determine whether the claimant can successfully adjust to other work.

*Kyle*, 609 F.3d at 855. (ECF No. 19, PageID.570-571.) Here, the ALJ concluded

that Plaintiff had exertional limitations (sedentary work), *in addition to* non-

exertional limitations (postural, manipulative, environmental). (R. at 25.) *See also*

20 C.F.R. § 404.1569a ("Exertional and nonexertional limitations."). Thus, if

Plaintiff intended to argue that use of the grids would result in a disability finding,

his offered argument is unclear.

Fortunately, the Commissioner brings a potential grids issue into focus by explaining that, if Plaintiff did not have any transferable skills, "the ALJ would have to find him disabled in light of his age and RFC." (ECF No. 20, PageID.598.) Specifically, an individual who is closely approaching advanced age but has limited or less education is disabled if his previous work experiences is "[s]killed or semiskilled–skills not transferable[,]" (Rule 201.10) but not disabled if his previous work experience is "[s]killed or semiskilled–skills transferable[,]" (Rule 210.11). 20 C.F.R. § Pt. 404, Subpt. P, App. 2. (*See* ECF No. 20, PageID.599.)

### b.  The ALJ identified oral persuasion as an acquired work skill from past relevant work.

"[O]ccupations are classified as unskilled, semi-skilled, and skilled." 20 C.F.R. §§ 404.1568. Having already determined that Plaintiff was limited to work at the sedentary exertional level, the ALJ concluded at Step 4 that Plaintiff could not perform his past relevant work as an Auto Salesman (skilled and light) and Auto Mechanic (skilled and medium). (R. at 25, 27; *see also* R. at 58.)

Still, the SSA considers a claimant to have transferable skills "when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs." 20 C.F.R. § 404.1568(d)(1). "Transferability is most probable and meaningful among jobs in which—

    (i)     The same or a lesser degree of skill is required;

    (ii)    The same or similar tools and machines are used; and

    (iii)   The same or similar raw materials, products, processes, or services are involved.

20 C.F.R. § 404.1568(d)(2).

The VE testified that Plaintiff's transferable skills were "[c]ommunication skills and persuasion skills." (R. at 58; *see also* R. at 72, 75, 82.) Accordingly, the ALJ identified "oral persuasion" as an acquired work skill from past relevant work. (R. at 27.) Although Plaintiff contends "there is no transferability because the same tools are not required[,]" (ECF No. 19, PageID.572), the Commissioner correctly notes that "such similarity was not required[.]" (ECF No. 20, PageID.601-602.) *See Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 856 (6th Cir. 2010) ("regardless of the tools or materials in Kyle's past industry, the VE repeatedly emphasized the supervision skill as the transferable skill . . . .").

### c.    The telephone solicitor job required some use of a computer.

At the administrative hearing, the VE testified that the telephone solicitor position would involve "computer skills, but they would be more basic, or would not rise to a clerical level." (R. at 58.) When the ALJ began to pose hypotheticals,

the VE testified that such a person could perform "some inside sales types of jobs[,]" such as a telephone solicitor (299.357-014).  (*See* R. at 71-73.)[7]

Upon examination by Plaintiff's disability representative, the VE agreed that "a person would have to use a computer to perform" the telephone solicitor job and that "[i]f they were unable to do computer work, it would eliminate the job."  (R. at 74, 75.)  Upon examination by the ALJ, the VE testified that an individual would need "[v]ery basic skills.  But not significant.  And the keyboarding level, for example, would be limited. . . . You would have to be able to enter data into the computer[,]" and potentially "switch screens[.]"  (R. at 75.)  Significantly, the VE agreed that these would be "the kinds of duties that could be learned within the training period of the job[.]"  (R. at 76; *see also* R. at 80.)

At Step 5, the ALJ determined that an individual with Plaintiff's age, education, work experience, and RFC, as well as acquired skill(s), could perform the work of a telephone solicitor.  (R. at 27, 29.)  The Dictionary of Occupational Titles defines the work of a telephone solicitor as follows:

> Solicits orders for merchandise or services over telephone: Calls
> prospective customers to explain type of service or merchandise

---

[7] The RFC as typed in the ALJ's decision was somewhat disjointed, as the various exertional and postural limitations were not grouped together.  This makes it difficult for the Court to confirm that the hypothetical posed to the ALJ is exactly the same as the RFC.  (*Compare* R. at 25, *with* R. at 71-73.)  Moreover, the need for a cane was listed twice (albeit consistently), as was the limitation on crouching (once as only occasionally and the other as prohibited).  Nonetheless, these observations do not seem to be germane to Plaintiff's statements of error.

offered. Quotes prices and tries to *persuade* customer to buy, using prepared sales talk. Records names, addresses, purchases, and reactions of prospects solicited. Refers orders to other workers for filling. Keys data from order card into *computer*, using keyboard. May develop lists of prospects from city and telephone directories. May type report on sales activities. May contact DRIVER, SALES ROUTE (retail trade; wholesale tr.) 292.353-010 to arrange delivery of merchandise.

DICOT 299.357-014 (Telephone Solicitor) (emphases added).  (*See also* R. at 263; ECF No. 19, PageID.571-572.)

### d. Plaintiff mistakenly treats computer use as a transferable skill.

Plaintiff contends that the ALJ based her decision on "a speculative hunch that he could perform a specific job," namely because the ALJ "did not properly consider the evidence whether Jacobs possesses the relevant transferable skills[,]" and "there was not enough evidence to support the finding that Jacobs can adjust to the work required of a telephone solicitor."  (ECF No. 19, PageID.570-571.)

First, Plaintiff contends he "does not have the transferable skills to meet the requirements of the job recommended by the VE and accepted by the ALJ."  (ECF No. 19, PageID.571.)  Plaintiff asks the Court to compare the above telephone solicitor description with the transferable skills – "communication skills and persuasion skills" – identified by the VE, generally claiming "it is not clear how the evidence supports [his] ability to perform the potential requirements in this role."  (ECF No. 19, PageID.571-572.)  However, Plaintiff seems to place

computer use on equal analytical footing with "communication skills and persuasion skills," which were identified by the VE as "transferable." (ECF No.19, PageID.571-572, 574-575; R. at 58, 72.) Although the VE testified about computer skills, they were described as "basic" and "not significant." (R. at 58, 75.) In other words, the computer use required of a telephone solicitor was not treated as a transferable skill. (R. at 81.) Thus, his contention that the ALJ "did not properly consider the appropriate transferable skill . . . [,]" is unconvincing. (ECF No. 19, PageID.575.)

Second, Plaintiff argues that "the ALJ did not inquire in sufficient detail as to the level of computer-related skills required for the performance of the suggested job[,]" likening the ALJ's inquiry to whether computers skills were "prerequisites." (*Id.*, PageID.572; R. at 58, 75.) But the ALJ did more than ask whether computer experience was a "prerequisite" to performing the telephone solicitor job. (R. at 75.) At the administrative hearing, Plaintiff testified about computer use in his sales job, namely that he looked up inventory. (R. at 61-63.) He also testified, "I wouldn't say I have any computer skills." (R. at 71.) When Plaintiff testified that, "they've been, at the dealerships, trying to teach me stuff on their computers, and I just don't get it[,]" the ALJ followed up with the VE, who clarified that computer programs "would be more complex in an automobile dealership[,]" and then went on to explain at length why that is. (R. at 78-79.)

Plaintiff interjected that "new cars and used cars are different."  (R. at 79.)  In

response to a question from the ALJ, the VE effectively testified that "the

telephone solicitor computer duty" was not more complex than pulling up and

looking at inventory, which Plaintiff had testified he could do "[j]ust in our store.

It's on your computer already, every month."  (R. at 79.)

Plaintiff contends that "[t]here was no weight accorded to the evidence

presented by Jacobs that most of his work in the previous job was done by hand

and the limited experience he has had with computers."  (ECF No. 19, PageID.572;

R. at 62, 82.)  To the extent Plaintiff argues that computer skills were "important to

performing the job," (ECF No. 19, PageID.572), the administrative hearing

inquiries were thorough and determined that such needs were basic.  The same

rationale applies to Plaintiff's concern that the potential of working in isolation

would mean he "would be unable to seek any assistance if need be . . . [,]" which,

in turn, "may impact his work performance negatively."  (*Id*., PageID.572-573.)

Plaintiff claims that "computer skills are not learned overnight and without

proper direction[,] [e]specially since the education level that [he] possesses is not

conducive to his chances of learning a new skill at this stage of his life, with other

limitations."  (ECF No. 19, PageID.574.)  However, at the hearing, Plaintiff

testified that he was 53 years old and had completed 10th grade (R. at 39), and the

VE took age, educational level, and past relevant work experience into consideration when testifying (R. at 71, 75).[8]

### e.   The Court should affirm the RFC's non-exertional limitations.

Plaintiff makes the point that the telephone solicitor position is based on more than "persuasion and communication skills[,]" which "only reflect one part of the overall job[.]" (ECF No. 19, PageID.574-575.)  However, as the Commissioner contends, the VE's testimony about the basic and trainable computer skills required in the telephone solicitor position "supports the ALJ's rejection of Plaintiff's argument concerning computer skills . . . ." (ECF No. 20, PageID.601; R. at 82.)  In fact, at the conclusion of the hearing, there was a lengthy exchange between Plaintiff's disability representative and the ALJ regarding computer use in a telephone solicitor position and transferability.  (R. at 80-82.)  As the ALJ put it, "if it becomes relevant, Mr. Jacobs' inability to use a computer, it would be based on his lack of ability because of his nonexertional limitations or because of some keyboarding issue." (R. at 80.)  Plaintiff's disability representative agreed with this characterization.  (*Id.*)

---

[8] *Incidentally*, the Court notes that, in this day and age, some people who are considerably older than Plaintiff have gained newfound adeptness with computers that they could never before have imagined, especially since the physical distancing required by the Covid-19 pandemic has forced new modes of communication.

Nonexertional limitations include those related to posture, manipulation, vision, communication, and the environment, as well as "maintaining attention or concentrating[,]" and "understanding or remembering detailed instructions[.]"  20 C.F.R. § 404.1569a(c)(1).  In this case, "even if Plaintiff's computer skills were limited . . . , they were sufficient to allow him to perform the job of telephone solicitor."  (ECF No. 20, PageID.601.)  Plaintiff not having illustrated that the RFC required any further non-exertional limitations, such as one to accommodate his alleged inability to grasp basic use of a computer or a further manipulative limitation to accommodate any keyboarding issue, the RFC should stand.

### F.    Conclusion

Plaintiff has not established a more restrictive RFC than that found by the tribunal – a burden that is his to meet.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 19), **GRANT** Defendant's motion for summary judgment (ECF No. 20), and **AFFIRM** the Commissioner of Social Security's decision.

### III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 25, 2020                     s/*Anthony P. Patti*
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE